COBB, Judge.
Carrigan & Boland, Inc., the developer/grantor of Riverside Landing subdivision, sought a declaratory judgment that it was the sole fee simple owner of Lot 35 in the Riverside Landing subdivision. Defendants, the thirty-four lot owners within the subdivision, counterclaimed for declaratory and injunctive relief, claiming a Vm interest in the lot.
Riverside Landing is a subdivision located on Merritt Island, Florida. It contains thirty-five lots, one of which is on the river and thirty-four of which are not. The developer originally intended to reserve Lot 35, the river lot, for construction of a dock with thirty-four boat slips. Each lot owner was to. have his own private boat slip. The developer checked with the county commissioner for Merritt Island and was advised there would be no problem in gaining approval for the dock. The developer made an initial application to the state, county, and federal governments in an attempt to obtain approval for building the dock and boat ramp in the subdivision. The developer needed approval from the county zoning board, the county commission, the Trustees of the Internal Improvement Fund of the State of Florida and the U.S. Corps of Engineers.
In November of 1965 the developer recorded the plat of Riverside Landing. The plat did not contain any restrictive covenants. In a separate document the developer also recorded restrictive covenants. The covenants involved in this suit are set out as follows:
16. The owner is constructing a dock on the riverfront and lot thirty five (35) of said subdivision is the riverfront lot. Said lot thirty-five (35) shall be owned by all of the owners of lots in said subdivision. As each lot is sold by the owner, the purchaser of said lot shall immediately be vested with a one thirty fifth (V35) interest in and to said lot thirty-five (35) and the said one thirty fifth (Vfe) interest in said lot thirty-five (35) shall thereafter follow the ownership of lots in said subdivision as the ownership shall change. Carrigan & Boland, Inc., shall retain a one thirty fifth (V35) interest in said lot thirty-five (35).
All of the owners of lots in said subdivision shall keep the said lot thirty-five (35) properly landscaped and shall keep the dock in a neat and orderly condition and in a proper state of repair, and each owner shall be obligated for one thirty fifth (V35) interest in and to the said lot thirty-five (35), and in the event the owners of lots in said subdivision shall fail to keep the said lot thirty-five (35) properly landscaped and the dock in a neat and orderly condition and in a proper state of repair for a period of three (3) months, the title to said lot thirty-five (35) shall revert and become vested in Carrigan & Boland, Inc., and said lot thirty-five (35) shall be used for residential purposes only.
19. The dock shall be for the exclusive use of the residents of said subdivision and cannot be leased or used by anyone other than the owners of Lots in said subdivision ...

These restrictions may be amended only by the consent of the owners of fifty percent (50%) of the lots in this subdivi *516 sion, except as to restriction number sixteen (16), which can be amended only with the permission and consent of the Board of County Commissioners of Bre-vard County....
The developer initially advertised that all residents of Riverside Landing would have access to the intercoastal waterway and the Indian River via the dock and boat ramp. From November 1965 to December 1967 the developer sold six lots. During that period the developer pursued the plans to • gain approval for building the dock and boat facilities. However, the developer could not gain approval for building the dock. When the developer realized it would not be able to develop the boat facilities, it still owned more than 50% of the lots. Therefore, the developer amended the restrictive covenants pursuant to paragraph 19 and deleted paragraph 16. The amendment stated that Lot 35 would be subject to all other restrictions. This amendment to the restrictive covenants was recorded, along with the Board of County Commissioners’ consent to the amendment as required by paragraph 19. The developer sought to purchase any interest the original six purchasers might have in Lot 35, but was unsuccessful. Following this amendment the developer did not advertise that residents would have available docking facilities. None of the deeds expressly conveyed an interest in Lot 35 from the developer to the lot owners. The developer paid the taxes on Lot 35 for the next eleven years. The developer never demanded that the lot owners pay any taxes on Lot 35. Lot 35 was never improved or landscaped and the maintenance of the lot was shared sporadically by the developer and the lot owners.
The trial court granted a summary judgment to the six original lot owners, finding that as a matter of law they had received a Vss interest in Lot 35 when they purchased their lots. The summary judgment was timely appealed by the developer.
The trial court ruled that each of the remaining lot owners also had a I/35 interest in Lot 35, holding the reverter provision contained in the restrictions unenforceable and the amendment to the restrictions invalid. The developer timely appealed that ruling.
The three points on appeal are set forth by appellant as:
POINT I
THE TRIAL COURT ERRED IN RULING THAT THE REMAINING TWENTY-EIGHT LOT OWNERS AND THE DEVELOPER EACH HAD A Vas INTEREST IN LOT 35 SINCE THE POSSIBILITY OF REVERTER PROVISION CONTAINED IN THE NOTICE OF RESTRICTIONS WAS UNENFORCEABLE AND THE AMENDMENT TO THE RESTRICTIONS WAS INVALID.
POINT II
THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF SIX OF THE DEFENDANT-LOT OWNERS, RULING THAT THEY HAD RECEIVED A Vfe INTEREST IN LOT 35 AS A MATTER OF LAW, AND IN NOT GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DEVELOPER AGAINST ALL THE LOT OWNERS.
POINT III
THE TRIAL ERRED IN NOT ALLOWING INTO EVIDENCE AND CONSIDERING, EVIDENCE THAT THE TWENTY-EIGHT LOT OWNERS, PRIOR TO THIS LAWSUIT, HAD OFFERED TO PURCHASE THE DEVELOPER’S INTEREST IN LOT 35.
We will consider the points on appeal in reverse order. The third point raised is the contention of the appellant, Carrigan & Bo-land, Inc., that the trial court erred in rejecting an evidentiary proffer of a letter wherein the twenty-eight lot owners offered to purchase the developer’s interest in Lot 35, for a specified price. The appellant urges that this letter constituted an admission by the twenty-eight lot owners that they recognized the ownership interest on Lot 35 by the developer, and was sent prior *517 to the development of a controversy or dispute in this regard, and therefore was not an inadmissible offer of settlement as held by the trial court. Frank v. Ruwitch, 318 So.2d 188 (Fla. 3d DCA 1975), cert. denied, 330 So.2d 775 (Fla.1976); Miller Yacht Sales, Inc. v. Lee, 368 So.2d 916 (Fla.4th DCA), cert. denied, 378 So.2d 347 (Fla.1979). This point is rendered moot by reason of our disposition of the first point on appeal.
In regard to the second point raised on appeal, we have no difficulty in affirming the judgment of the trial court in favor of the six original lot owners who purchased prior to the developer’s amendment to the restrictive covenants. The recorded restrictive covenants specifically provided that purchasers of each of the subdivision lots were immediately vested with a V&5 interest in Lot 35 at the time of the conveyance to them. The restrictions were incorporated by reference in the deeds to the original six, who relied on this representation of record. McCorquodale v. Keyton, 63 So.2d 906 (Fla.1953).
On the first point, we cannot agree with the trial court’s invalidation of the developer’s amendment deleting paragraph 16. A grantor has the right to amend, alter, modify or change restrictive covenants if he reserves that right, as did the developer in the instant case, and the reservation is reasonable. Flamingo Ranch Estates, Inc. v. Sunshine Ranches Homeowners, Inc., 303 So.2d 665 (Fla. 4th DCA 1974); Johnson v. Three Bays Properties #2, Inc., 159 So.2d 924 (Fla. 3d DCA 1964). The amendment in the instant case did not unreasonably destroy “a general scheme of development.” Bay Island Towers, Inc. v. Bay Island-Siesta Association, 316 So.2d 574 (Fla. 2d DCA 1975). In the instant situation, the evidence clearly shows that the developer made diligent and earnest attempts to gain the requisite permission for construction of the docking facilities, and that the amendment was based on the principle of impossibility of performance. See Osius v. Barton, 109 Fla. 556, 147 So. 862 (1933). At the time of purchase by the subsequent twenty-eight lot owners, there was no reliance on paragraph 16 of the recorded covenants because it had been formally deleted of record. We conclude that the trial court erred in ruling the amendment invalid.
We therefore affirm the judgment of the trial court in respect to the six original lot owners and reverse the judgment in favor of the subsequent twenty-eight owners based upon the erroneous invalidation of the amendment, and remand for entry of judgment for appellant, Carrigan & Boland, Inc., in regard to its ownership of a interest in Lot 35.
AFFIRMED in part; REVERSED in part; and REMANDED.
ORFINGER, J., concurs.
SHARP, J., concurs in part, dissents in part, with opinion.