POLEN, J.
 

 Appellants the Klinows appeal the trial court’s final order entering judgment for fees and costs in favor of appellee Island Court at Boca West Property Owners’ Association, Inc. (“Island Court”). We find that the Homeowners’ Association conducted a proper special meeting of its members and successfully obtained a two-thirds majority vote in favor of a proposed beautification project. Accordingly, we affirm.
 

 The Klinows purchased their home in Island Court on September 21, 1987 and received a warranty deed stating that “conveyance is subject to the ... Declaration of Restrictions and Protective Covenants for Island Court.” Associations are governed by chapter 720, Florida Statutes,
 
 [1]
 
 and any governing documents particular to the association, such as articles of incorporation, bylaws, and declarations. Specifically, the Island Court articles state that each owner is a member of the Boca West Maintenance Association (“Association”) and “becomes subject to the terms and conditions of the Amended Declaration of Maintenance Covenants for Boca West (“Declaration”) dated April 18,1974.” The Declaration provides that it may be further amended at any time upon a two-thirds member vote.
 

 A properly held special meeting took place on December 13, 2007 to discuss a beautification project to replace driveways and sidewalks on the individual lots at each unit owner’s expense. The proposal passed with two-thirds of the votes in favor of the project. At its annual meeting, the Association sought to receive approval for some clarifications to the language of the amendment. The amendment still requested the authority to replace walkways and driveways, but also added more language, including that which gave the Association sole discretion to make those changes. The amendment undisputedly passed, again with at least two-thirds vote. Both amendments were recorded on May 21, 2008.
 

 In April of 2008, the Klinows filed a complaint against the Association for temporary and permanent injunctive relief and damages. The complaint alleged several counts, including substantive and procedural defects to the amendments. The trial court dismissed the complaint and referred the matter to mediation. The Klinows filed an amended complaint when mediation efforts failed. The amended complaint alleged six counts: declaratory judgment as to procedural violations related to the special meeting; declaratory judgment as to procedural violations of the written agreement at the annual meeting; permanent mandatory injunctive relief declaring amendments void; misrepresentation and fraud; breach of fiduciary duty against the Board of Directors; and violation of section 720.303, Florida Statutes. After a complete trial, the court entered a final judgment, finding for Island Court on all counts. Island Court was thereby awarded attorney’s fees and costs. This appeal followed.
 

 
 *180
 
 “The interpretation of a contract or a covenant is a matter of law, and, therefore, renewable by this court” using the de novo standard of review.
 
 Argoff v. Rainberry Bay Homes Ass’n,
 
 828 So.2d 399, 401 (Fla. 4th DCA 2002);
 
 Royal Oak Landing Homeowner's Ass’n v. Pelletier,
 
 620 So.2d 786, 788 (Fla. 4th DCA 1993). Aside from contract interpretation, the trial court considered many factual issues below as well. This court has provided that mixed questions of fact and law require the application of two different standards of review.
 
 Powell v. State,
 
 958 So.2d 1012, 1013-14 (Fla. 4th DCA 2007). The factual findings must be supported by competent, substantial evidence, while legal findings are reviewed de novo.
 
 Id.
 

 “In determining the enforceability of an amendment to restrictive covenants, the test is one of reasonableness.”
 
 Holiday Pines Prop. Owners Ass’n v. Wetherington,
 
 596 So.2d 84, 87 (Fla. 4th DCA 1992). This court defined “reasonable” as “not arbitrary, capricious, or in bad faith.”
 
 Hollywood Towers Condo. Ass’n v. Hampton,
 
 40 So.3d 784, 787 (Fla. 4th DCA 2010).
 
 [2]
 
 In other words, as we stated in
 
 Holiday Pines,
 
 the modification of restrictions cannot “destroy the general plan of development.”
 
 Holiday Pines,
 
 596 So.2d at 87 (citing
 
 Nelle v. Loch Haven Homeowners Ass’n,
 
 413 So.2d 28 (Fla. 1982)). Amendments which cause “the relationship of lot owners to each other and the right of individual control over one’s own property” to be altered are unenforceable.
 
 Id.
 
 at 88. Such an alteration is considered a “radical change of plans.”
 
 Id.
 

 The original Island Court Declaration allowed the Association to paint, repair, replace and care for garage doors, fences, and exterior building surfaces, other than front residence doors, windows, screening, roofs, gutters, and down-spouts. A proposed amendment merely sought to allow the Association to replace privately owned driveway and walkway materials in addition to those tasks enumerated in the original Declaration. The Association’s beautification plan included a change of the type of driveway whereby all driveways would conform to the same specifications and would adhere to the general plan of uniformity in the development, as promised. The Board received two-thirds approval by the voting members to make such modifications.
 

 This court has defined a radical change as a change which would create an inconsistent scheme, or a deviation in benefit from that of the grantee to that of the grantor.
 
 Flamingo Ranch Estates, Inc. v. Sunshine Ranches Homeowners, Inc.,
 
 303 So.2d 665, 666 (Fla. 4th DCA 1974). Here, the changes would mutually benefit the grantor and the grantee. The benefit to the grantee is exemplified in a letter written to the homeowners which provided that the proposed changes would result in a more aesthetically pleasing community. The attempt to beautify and unify Island Court would effectually upgrade the values of the property within the community without fundamentally changing any homeowner’s personal property or community plans. Thus, there is no shift in benefit from the grantee to grantor; therefore no radical change of plan would occur as to make the changes unreasonable.
 

 Additionally, the Klinows alleged there was a procedural error during the vote to pass the amendment and argued that “contingency votes” were improperly submitted. Island Court rebutted the allegation with the fact that three voters merely
 
 *181
 
 changed their minds after reconsidering the language of the amendment. The Kli-nows argued that contingency votes are not allowed in the Association or under Florida Statutes, so three votes in favor of the amendment which they deemed “contingent” should be declared invalid. Without those three votes, the two-thirds majority threshold would not have been met, preventing the amendment from passing. However, this argument lacks merit because a second vote was conducted shortly thereafter, encompassing the same amendments as the original vote with more discretion being granted to the Association. That second vote undisputedly passed with the necessary number of votes.
 

 The Klinows also contended that because no voting certificates were used, all votes from owners of lots with multiple owners should not count toward the passing of the amendment. However, the Department of Business and Professional Regulation has concluded that:
 

 Voting certificate requirements are allowable devices to avoid confusion from possible conflicting votes from a single unit. They
 
 trill not be rigidly enforced to interfere with the statutory right to vote
 
 of recognized owners of condominium units, unless the association demonstrates good cause to do so. When an association has not consistently enforced provisions requiring voting certificates,
 
 failure to comply with technical requirements of such provisions will not be accepted as grounds to reject votes
 
 of unit owners of the condominium.
 

 Caribbean Gardens Condo. Ass’n v. Unit Owners Voting for Recall,
 
 No. 2007-05-3419, 2007 WL 6609169 (Fla. DBPR Arb. Oct. 24, 2007) (emphasis added).
 

 The Klinows’ position was that because Mr. Klinow was able to produce a voting certificate from a past vote that the Association failed to comply with its own requirements. To the contrary, unless the voting certificates were used regularly and always, a vote will not be disenfranchised in the absence of a certificate. The proof of one past voting certificate does not show use either regularly or always and, instead, only shows certificates have been used at least once before.
 

 There was evidence in the record to support a finding that the amendment to the Declaration which is at issue in this case was reasonable and beneficial to the owners of the Island Court property homes. Further, the Homeowners’ Association conducted a proper special meeting of its members and successfully obtained a two-thirds majority vote in favor of the proposed beautification project. Accordingly, we affirm the decision of the lower court.
 

 Affirmed.
 

 WARNER and LEVINE, JJ., concur.
 

 [1]
 

 . Chapter 720 of the Florida Statutes is meant "to provide procedures for operating homeowners' associations, and to protect the rights of association members without unduly impairing the ability of such associations to perform their functions.” § 720.302(1), Fla. Stat. (2010). The voting rights of Florida homeowners' associations are found under section 720.306(l)(b), which states that “[u]nless otherwise provided in the governing documents or required by law ... any governing document of an association may be amended by the affirmative vote of two-thirds of the voting interests of the association.” § 720.306(1)(b), Fla. Stat. (2010).
 

 [2]
 

 .
 
 Holiday Pines
 
 and
 
 Hollywood Towers
 
 pertain to condominium associations, but the cases are instructive in determining whether Island Court’s Association acted reasonably.