JACOBUS, J.
This is an appeal by individual homeowners in a large-scale development from a summary judgment that rejected their challenge to the amendment to their declarations by the developer. The amendment permitted the developer to keep the money left over from the homeowners’ annual dues rather than place them in a reserve account for future expenses. The amendment also relieved the developer from certain obligations that it undertook in the declaration for maintaining the lawns and landscaped areas of the common and recreation areas in the development. In addition, the homeowners appeal the trial court’s finding that section 720.3086, Florida Statutes, did not require the developer to account annually as to the collection of assessments and the expenses. We affirm in part and reverse in part.
Oak Run consists of twenty-five neighborhoods with approximately 3,439 homes. Between 1985 and 2008, the developer recorded declarations with respect to each association within Oak Run as each neighborhood was developed. All of the declarations are materially the same as the first declaration recorded in 1985. As part of its development plan, the developer retained ownership and control of the common areas and recreation facilities within Oak Run. The declarations required each homeowner to pay: (1) an annual assessment payable in twelve monthly installments, (2) any special assessments deemed appropriate by the developer for violations of the declarations, and (3) road and drainage assessments. A base amount for fees was set in each declaration. After the first three years and at the Developer’s discretion, the fee amount would vary yearly.[1] Prior to May 6, 2005, Article VI, Section I, *931 of the declaration required the annual assessment to be applied not only to the recreation and common areas, but to additional items such as utility cost, garbage and trash collections, security, cable television reception service, Oak Run’s closed-circuit television channel, roads and drainage facilities. The provision also stated that the assessment could be used to fund the creation of reasonable reserves, stating:

Covenants for Maintenance Assessments

Section 1. Purpose of Assessments. The assessments levied by the Declarant shall be used in the sole and absolute discretion of the Declarant for the purpose of promoting the recreation, health, safety and welfare of the residents in Oak Run; constructing, maintaining, operating, repairing and replacing improvements on the Common Areas and Recreational Areas; enforcing the Covenants and Restrictions; and for the maintenance, operation, repairing and replacing of properties, services, and facilities which have been constructed, installed or furnished, which are devoted to the purpose and related to the use and enjoyment of the Common Areas and Recreational Areas including, but not limited to, the payment of taxes, and insurance thereto, on the Common Areas and Recreational Areas, and repair, replacement, and additions thereto, and for the cost of labor, equipment, materials, management and supervision thereof. The assessments shall also be used for maintaining the laums and landscaped areas of the Common Areas and Recreational Areas, and for all utility costs including electricity, water, gas and telephone used in connection with the foregoing, garbage and trash collections, twenty-four hour security service, cable television reception service, and an exclusive closed circuit Oak Run television channel, and for road and drainage facilities, repair and maintenance. The assessment may also provide reasonable reserves for deferred maintenance and replacements, for construction of Common Areas, Recreational Areas, and shall be used as a mean of enforcing compliance with these restrictions.
(emphasis added).
On May 6, 2005, the developer recorded an amendment to the declarations which deleted those portions of the provision underlined above. As amended, the new provision limited the use of the assessments to the common areas and recreational areas, and allowed the developer to retain any unused assessments, effectively preventing the creation of any reserves. The new provision stated as follows:

Covenants for Maintenance Assessments

Section 1. Purpose of Assessments. The assessments levied by the Declarant shall be used in the sole and absolute discretion of the Declarant for the purpose of promoting the recreation, health, safety and welfare of the residents in Oak Run; constructing, maintaining, operating, repairing and replacing improvements on the Common Areas and Recreational Areas; enforcing the Covenants and Restrictions; and for the maintenance, operating, repairing and replacing of properties, services, and facilities which have been constructed, installed or furnished, or may subsequently be constructed, installed or furnished, which are devoted to the purpose and related to the use and enjoyment of the Common Areas and Recreational Areas including, but not limited to, the payment of taxes, and insurance thereto, on the Common Areas and Recreational Areas, and repair, replacement and additions thereto, and for the cost of labor, equipment, materials, management and *932 supervision thereof. Owners acknowledge that the payment of this assessment is a fee for those services provided by the Declarant and is not intended to represent a prorated share of actual expenses and the Declarant is entitled to retain any excess amounts collected from the Owners over cost and expense in providing such services.
(emphasis added). The amendment was made on the authority of provisions in the declaration that permitted the developer to amend the declaration in its sole and absolute discretion.
The homeowners’ amended complaint contained seven counts against the developer and the developer’s president. Counts 1 and 2 sought declaratory and injunctive relief regarding the amendment to Article VI, Section 1; counts 3 and 4 sought declaratory and injunctive relief regarding the developer’s alleged failure to comply with the financial disclosure requirements of section 720.3086, Florida Statutes, for the years 2005 through 2010; counts 5 and 6 sought restitution from Oak Run and its general partner respectively; and count 7 sought damages from the president of the developer for conversion.
Both parties filed cross-motions for summary judgment as to count 1, with the homeowners contending that the developer’s right to amend the declaration was limited by an implied “reasonableness test” and the amendment was invalid as it substantially changed the character of the development. The lower court ruled against homeowners on this issue, which foreclosed their claims on counts 2 and 5 through 7 of the complaint. The developer also moved for and was granted summary judgment on counts 3 and 4 of the complaint regarding its alleged duty to comply with the financial disclosure requirements of section 720.3086, Florida Statutes, for the years 2005 through 2010, concluding all of homeowners’ claims.
We affirm in part and reverse in part with respect to the ruling on count 1, concerning the amendment to Article VI, Section 1. We recognize that a developer has the right to amend, alter, modify or change restrictive covenants if the right is reserved and the reservation is reasonable. Carrigan & Boland, Inc. v. Worrock, 402 So.2d 514, 517 (Fla. 5th DCA 1981). However, Florida has recognized at least one implied limitation on the right to amend, which is “that the reserved power be exercised in a reasonable manner so as not to destroy the general plan.” Nelle v. Loch Haven Homeowners’ Ass’n, 413 So.2d 28, 29 (Fla.1982). The Restatement (Third) of Property recognizes the same limitation, but imposes an additional restriction that the developer may not materially change the burdens on the existing community members unless they are apprised of this possibility by the declaration. Specifically, it provides:
A developer may not exercise a power to amend or modify the declaration in a way that would materially change the character of the development or the burdens on the existing community members unless the declaration fairly apprises purchasers that the power could be used for the kind of change proposed.
Restatement (Third) of Property § 6.21 (2000). In Klinow v. Island Court at Boca West Property Owners’ Ass’n, 64 So.3d 177, 180 (Fla. 4th DCA 2011), the Fourth District also held that an amendment to a declaration will be impermissible if it effectuates a “radical change of plans,” which was defined, in turn, as “a change which would create an inconsistent scheme, or a deviation in benefit from that of the grantee to that of the grantor.” Id. (citing Flamingo Ranch Estates, Inc. v. Sunshine *933 Ranches Homeowners, Inc., 303 So.2d 665, 666 (Fla. 4th DCA 1974)).
The amendment made by the developer of Article VI, Section I, does not result in material changes to the character of the development. However, the amendment impermissibly changes the burdens between the parties. It operated to relieve the developer of his express burden to use the funds collected for maintaining the lawns and landscaped areas of the common areas and the recreation areas, and for all utility costs including electricity, water, gas and telephone used in connection with the foregoing, garbage and trash collections, twenty-four-hour security service, cable television reception service, an exclusive closed-circuit Oak Run television channel, and for the road and drainage facilities, repair, and maintenance. Although the developer did not attempt to shift these burdens to any other person or entity, it is not reasonable for the developer to collect fees intended to cover these obligations, while eliminating its duty to apply the funds towards these same obligations and enacting an amendment that allows them to pocket any excess funds. Therefore, we hold that the amendment was an improper exercise of the developer’s amendment power to the extent it relieves the developer of those burdens. See Flamingo Ranch, 303 So.2d at 665 (stating that the court must read a reasonableness requirement into clause reserving right to developer to amend declaration because the reservation is inherently inconsistent with elaborate set of restrictions designed to provide for general scheme of development); see also Sepe v. City of Safety Harbor, 761 So.2d 1182 (Fla. 2d DCA 2000) (explaining that implied covenant of good faith is a mechanism to protect the parties’ reasonable expectations and is frequently applied when one party has sole power to make discretionary decision without defined standards). The remaining amendments to the declaration may somehow disappoint the homeowners’ expectations, including the amendment allowing the developer to pocket “excess” maintenance fees, but they are permissible because they do not change the character of the community or the burdens between the grantee and grantor. The developer conceded at oral argument that the method of establishing the amount of the recreation fee is unchanged and is still governed by Article VI, Section V, of the declarations, and homeowners have not been called on to pay any more than under the original declarations. The developer also had the right under the original declarations to charge certain “service” fees and was not obligated to establish reserves, so that no true shift in burdens occurred as a result of this provision.
Our ruling on this issue disposes of count 2 of the complaint, which sought an injunction restoring the original version of Article VI, Section I, prohibiting the developer from pocketing excess funds, and mandating a refund of any fees pocketed by defendants. The ruling also requires us to affirm the judgment in favor of defendants on counts 5 through 7, which sought restitution and damages for any excess fees pocketed by defendants.
Finally, we reverse the final summary judgment in favor of the developer as to counts 3 and 4 of the complaint. The trial court dismissed these counts on the basis that section 720.3086, Florida Statutes,[2] was not applicable to the developer. *934 The statute was first passed after the majority of the declarations involved herein were recorded in the public records. The developer contended that the statute does not apply to require it to account to homeowners since this would be a retroactive application of the statute that impairs its vested right to the confidentiality of its financial records. However, the developer had no vested rights to the confidentiality of its records which could be impaired by the statute. See Landgraf v. USI Film Prods., 511 U.S. 244, 269-70, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); Fla. Hosp. Waterman, Inc. v. Buster, 984 So.2d 478, 491 (Fla.2008). As the owner of the common and recreational facilities, the developer is subject to the statute, which by its terms is applicable to a residential subdivision in which the owners of the lots or parcels must pay a mandatory maintenance or amenity fee to the subdivision developer or to the owners of the common areas. The statute creates a duty on the part of the entity collecting fees, within sixty days following the end of each fiscal year, to provide a complete financial report on the actual total receipts of mandatory maintenance or amenity fees received by it and an itemized listing of the expenditures made by it from such fees for that year. It is apparent from a plain reading of the statute that the Legislature meant to create some form of minimal regulation of owners of common areas and recreational facilities in subdivisions that require a mandatory fee to have a minimum accounting to those obligated to pay the fees. We hold that the trial court erred in finding that the developer was not required to comply with the statute.
AFFIRMED IN PART and REVERSED IN PART.
GRIFFIN and TORPY, JJ., concur.

. Article V, Section V of the declaration.

. Specifically, the statute states:
In a residential subdivision in which the owners of lots or parcels must pay mandatory maintenance or amenity fees to the subdivision developer or to the owners of the common areas, recreational facilities, and other properties serving the lots or parcels, the developer or owner of such *934 areas, facilities, or properties shall make public, within 60 days following the end of each fiscal year, a complete financial report of the actual, total receipts of mandatory maintenance or amenity fees received by it, and an itemized listing of the expenditures made by it from such fees, for that year. Such report shall be made public by mailing it to each lot or parcel owner in the subdivision, by publishing it in a publication regularly distributed within the subdivision, or by posting it in prominent locations in the subdivision. This section does not apply to amounts paid to homeowner associations pursuant to chapter 617, chapter 718, chapter 719, chapter 721, or chapter 723, or to amounts paid to local governmental entities, including special districts.
§ 720.3086, Fla. Stat.