# Third District Court of Appeal

## State of Florida

Opinion filed October 8, 2014.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D11-1792
Consolidated: 3D11-1952
Lower Tribunal Nos. 08-320-K; 08-937-K

_____


**Luani Plaza, Inc., etc.,**
Appellant/Cross-Appellee,

vs.

**Michael Burton, d/b/a
Burton Family Partnership,**
Appellee/Cross-Appellant.



Appeals from the Circuit Court for Monroe County, David J. Audlin, Jr., Judge.

John Marston (Key West); John R. Allison, III (Key West), for appellant/cross-appellee.

Brett C. Powell and P. Brandon Perkins, for appellee/cross-appellant.


Before SHEPHERD, C.J., and WELLS and LAGOA, JJ.

SHEPHERD, C.J.

This is an appeal from a final judgment rendered after a bench trial, resolving disputes between Dr. Michael Burton, the owner of two units in Luani Plaza in the City of Key West, Florida, and Luani Plaza, Inc., the business owner's association (the "Association") which administers the common areas of Luani Plaza. We summarily affirm the well-reasoned final judgment of the trial court in all respects sans one, that portion of the final judgment authorizing Dr. Burton to convert his units into affordable housing units.[1] A brief recitation of the facts of this case is necessary to explain our decision.

## FACTUAL AND PROCEDURAL BACKGROUND

Luani Plaza best can be described as a commercial plaza of businesses and professional offices. The entire complex resembles a strip mall. It is zoned "limited commercial" and consists of fifteen separate parcels, each a "unit." The units are held by individual business owners in fee simple. Each "unit" includes that business owner's individual structure, and the land in front and back of the

---

[1] The parties agree the attorney's fee issue raised by Luani Plaza is not ripe for review. See, e.g., Demaio v. Coco Woods Lakes Ass'n, Inc., 637 So. 2d 369 (Fla. 4th DCA 1994) (holding prevailing party determination not ripe until trial court actually enters an award of fees). We also clarify the issue raised by Dr. Burton regarding damages for the delay in paving the parking areas. The trial court found "defendant" liable for additional costs incurred by Luani Plaza due to the City's refusal to issue a permit. At this point, the City was a defendant in the action. The award of $4,897.01 to Luani Plaza against Dr. Burton did not include an amount for damages occasioned by the paving delay. The trial court determined the City responsible for improperly denying the permit. Thus, we do not read the final judgment as holding Dr. Burton liable for expenses associated with this delay.

2

structure. The fee simple boundaries of each unit are established by metes and bounds descriptions found in a Declaration of Covenants, Conditions and Restrictions, recorded by the developer of the Plaza in the public records of Monroe County in 1982. Though not a condominium, the ownership constitutes "a common interest community," as generally described in the Restatement (Third) of Property: Servitudes – "a real-estate development or neighborhood in which individually owned lots or units are burdened by a servitude that imposes an obligation that cannot be avoided by nonuse or withdrawal." Restatement (Third) of Prop.: Servitudes § 6.2 (2000).

The recorded Declaration provides that covenants and restrictions run with the land. There is no land owned jointly or in common by the owners of the units, but each unit owner is a member of the Association. The Association is charged by the Declaration with the responsibility to fix and collect assessments, and to maintain the "Common Area" in good condition and repair. The "Common Area" of the property is defined as "those areas upon which a building is not constructed," as shown in a schematic in the Declaration. Every owner has a right and easement of enjoyment in and to the Common Area. Additionally, the Declaration cedes architectural control and right of approval of all proposed external modifications to structures within the project to the Association.

3

In 1990 and 2002, Dr. Burton (personally and through a family partnership) became owner of two units in Luani Plaza. On July 8, 2003, Dr. Burton applied to the Association for permission to erect dormers on the second floor of his units for the purpose of creating storage space. The Association neither approved nor disapproved the proposal. Rather, it advised Dr. Burton that the plans were not sufficiently complete for the Association to be able to make a decision. Dr. Burton ignored the request for further information and built the dormers.[2] Thereafter, without notice to the Association, Dr. Burton applied to the City to convert the second floor of each unit to residential use. In connection therewith, Burton obtained from the City a recordable affordable housing restriction declaration, which he executed on December 7, 2007, without the prior knowledge or approval of the Association.

The Luani Plaza Declaration contains 146 prohibited uses of the property, ranging from "animal hospitals" to "vulcanization," but is silent about residential use. When the Association learned of Dr. Burton's decision to convert his units to residential use, it demanded he cease the conversion. Dr. Burton refused. On February 11, 2008, the Association amended the Declaration (Fifth Amendment),

---

[2] Dr. Burton contends he did so in reliance on Article VIII of the Declaration that deems a request approved unless the Board of Directors of the Association "fails to approve or disapprove such design and location within thirty (30) days after said plans and specifications have been submitted to it." Burton maintains the Board of Director's response was neither and therefore he was authorized to continue with his modification.

4

specifically to prohibit residential use of the units. When Dr. Burton nevertheless continued to move forward with his project, the Association, on June 13, 2008, filed the present action seeking a mandatory injunction against his use of the property for residential purposes. It was not until May 25, 2010, that Dr. Burton received a certificate of occupancy for the renovated units. The units first were occupied as residential units two months thereafter.

The Association argues that the use of the units as residential dwellings is incompatible with the existing commercial shopping center and professional office use. Moreover, the Association claims the conversion by Dr. Burton of his two units to residential use has increased the risk and cost of liability insurance to the Association. We find the trial court erred in concluding that Dr. Burton could put the units to residential use.

## ANALYSIS

The issue presented requires an interpretation of the Declaration of Covenants, Conditions and Restrictions of Luani Plaza, Inc., as amended, and more particularly, as amended by the Fifth Amendment to the Declaration. The Declaration and all properly adopted amendments thereto form a binding contract among the owners of the "units" in Luani Plaza. See Cohn v. Grand Condo. Ass'n, 62 So. 3d 1120, 1121 (Fla. 2011). The interpretation of this contract and its covenants is a matter of law, and therefore reviewable by this court de novo. See

5

Klinow v. Island Court at Boca W. Prop. Owner's Ass'n, 64 So. 3d 177, 180 (Fla. 4th DCA 2011).

We note at the outset that the Fifth Amendment to the Declaration prohibiting residential use of the units at Luani Plaza was properly adopted by the unit owners. Article X, Section 3 of the Declaration provides that it "may be amended at any time and from time to time upon execution and recordation of an instrument executed by the Owners holding not less than four-fifths of the voting interests." The adoption of this amendment was done in accordance with these procedural requirements.

Dr. Burton argues that the Fifth Amendment nevertheless is unenforceable against him for two reasons: (1) the prohibition of the Amendment unreasonably and arbitrarily denies him the use of his own private property; and (2) the Amendment is being impermissibly applied against him retroactively. We find no merit in either position.

We have no quarrel with Dr. Burton's assertion that an amendment to a declaration of covenants and restrictions concerning the use of real property cannot be arbitrary, capricious or even promulgated in bad faith. See Klinow, 64 So. 3d at p. 180 (citing Hollywood v. Island Court at Boca W. Prop. Owner's Ass'n v. Hampton, 40 So. 3d 784, 787 (Fla. 4th DCA 2010)). The test of enforceability of an amendment to a restrictive covenant is one of reasonableness. Klinow, 64 So.

6

3d at 180. Any amendment made to a declaration of covenants and restrictions "must be exercised in a reasonable manner so as not to destroy the general plan of the development." Holiday Pines Prop. Owners Ass'n v. Wetherington, 596 So. 2d 84, 87 (Fla. 4th DCA 1992); Zequera v. Centennial Homeowners' Ass'n, 721 So. 2d 751, 752 (Fla. 3d DCA 1998) (applying "reasonableness" measure to determine whether grantor lawfully exercised its rights to amend covenants and restrictions).

The Fifth Amendment to the Declaration in this case comprises a reasonable exercise of the amending power of the Declaration. Luani Plaza was conceived as a commercial business project, and that was its use for more than two decades before Dr. Burton decided to try to impress a residential use upon the Plaza. It is true that a prohibition on "residential use" is not among the 146 prohibited uses of the project in the Declaration. However, a cursory perusal of these prohibitions, especially when considered within the context of the entire document, leaves little doubt the scrivener had but one thing in mind – commercial use – at the time of drafting. The fact Dr. Burton declared in his application to the Association that he wished to modify the units he owned by adding dormers for the purpose of facilitating the use of the space as "storage," followed by securing permits to modify the interior of the units to serve as affordable housing without a mention to the Association, suggests that Dr. Burton himself may at all times have interpreted

7

the Declaration as we do here. The arbitrariness and capriciousness of both usage and process in this case seems to fall on Dr. Burton.[3]

Finally, the adoption of the Fifth Amendment did not impose an impermissible retroactive regulation on Dr. Burton. The Declaration obligated Dr. Burton to seek Association approval to modify the exterior of his units. There was no similar requirement for interior modification. However, Dr. Burton was subject to any amendments to the Declaration. See Flagler Federal Sav. & Loan Ass'n of Miami v. Crestview Towers Condo. Ass'n, 595 So. 2d 198, 200 (Fla. 3d DCA 1992) (stating that in a common interest community governed by a declaration authorizing amendments, "unit owners who acquire[] title prior to [an] amendment, [are] bound by the Declaration as amended"); see also, Woodside Village Condo. Ass'n v. Jahren, 806 So. 2d 453, 461 (Fla. 2002) ("Thus, we find that respondents were on notice that the unique form of ownership they acquired when they purchased their units . . . was subject to change through the amendment process, and that they would be bound by property adopted amendments."). In this case, Dr. Burton was on notice of the prohibition against residential use not only by the

_____

[3] Dr. Burton also references Article X, Section 4, of the Declaration, which provides for future annexation of residential property. However, annexing contiguous property, which previously may have been used for residential purposes, does not equate to converting original property, used exclusively for commercial and professional purposes, to residential use. Rather the annexed residential property would become commercial property upon being added to Luani Plaza.

long-established character of use of Luani Plaza, but also by the recording of the Fifth Amendment in the public records of Monroe County on February 11, 2008, passed by the Association soon after it learned Dr. Burton planned to put his units to residential use. Dr. Burton did not obtain a certificate of occupancy for his converted units until May 25, 2010, more than two years after the Fifth Amendment was recorded. The Fifth Amendment was not retroactively applied against him. Rather, Dr. Burton proceeded with his interior improvements with full knowledge, from the beginning, that his units could not be used for residential purposes.

We reverse that portion of the final judgment which finds the Fifth Amendment to the Declaration unenforceable against Dr. Burton, and remand for further proceedings in accordance with this opinion.

Affirmed in part, reversed in part, and remanded.