DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JOHN R. CHOATE, CHOATE, INC.,** and **MYCO INDUSTRIES, INC.,**
Appellants,

v.

**RYSURG, LLC,** a Michigan limited liability company, **RYSURG, LLC,** a Florida limited liability company, **RYNERSON, INC.,** a Florida corporation, **JAMES R. RYNERSON,** and **BLEPHEX, LLC,** a Florida limited liability company,
Appellees.

No. 4D20-1475

[November 10, 2021]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Donald Hafele, Judge; L.T. Case No. 502014CA000805XXXXMB-AG.

Christopher Kammerer of Kammerer Mariani PLLC, West Palm Beach, for appellants.

Matthew D. Robson of Quinn Emanuel Urquhart & Sullivan, New York, New York, John C. Carey and Nicholas J. Doyle of Carey Rodriguez Milian, LLP, Miami, and James A. Stepan of the Law Office of James A. Stepan, P.A., Hollywood, for appellees.

LEVINE, J.

The parties were business partners who planned to manufacture and market a device that treated an ocular disorder. Appellees received a patent for this device. A dispute between the partners occurred and was subsequently resolved by settlement agreement, pursuant to which appellants received $162,000 and agreed not to file certain future patent applications. Appellants subsequently filed a patent application for an adapter to a device used to treat ocular disorders. Appellees then moved to enforce the settlement agreement claiming that appellants breached the settlement agreement. The trial court agreed and ordered all of the appellants to repay the $162,000 even though the settlement agreement specifically required only one of the appellants, Choate, Inc., to be responsible for repayment in the event of a breach.

We find that the trial court correctly determined that appellants violated the breach language of the settlement agreement by filing a patent application in contravention of the settlement agreement. However, we also find that the trial court erred in expanding those required to reimburse appellees by making all appellants liable when the clear language of the settlement agreement made only Choate, Inc., responsible. In both issues we are guided, and ultimately bound, by the language of the settlement agreement. Thus, we affirm in part and reverse in part.

Appellee Rynerson, an ophthalmologist, developed a medical device for treating blepharitis, a disease that causes eyelid inflammation. After filing patent application number 13/939,365 ("365 application"), Rynerson received a patent for his device, which was known as the BlephEx. Before receiving the patent, Rynerson met with appellant Choate and discussed forming a business to manufacture and market the BlephEx. Together, they formed a new company, RySurg. A dispute later arose between the parties, resulting in Choate's departure from RySurg and the parties filing a lawsuit against each other.

During the pendency of the lawsuit, Choate filed two patent applications: patent application number 14/229,275 ("275 application") and patent application number 14/174,608 ("608 application"). The 275 application was entitled "Method and Device for Treating an Ocular Disorder." It described "[a] device for the removal of a debris from an eye" comprising of "a chuck connected to and rotatably driven by said mechanical drive unit, . . . said instrument comprising: a swab having a tip portion . . . ." Choate admitted that the 275 application was essentially a duplicate of the BlephEx patent. The 608 application was entitled "Method and Apparatus for Ultrasonic Eye Cleaner." That application described "an ultrasonic eye cleaning device . . . comprising a chuck driven by the rotating output member of the motor" and "an instrument having a tip that is attachable to the chuck and defining a free end forming a cleaning swab."

The parties entered a settlement agreement resolving the lawsuit. Pursuant to the settlement agreement, BlephEx agreed to pay Choate, Inc., $162,000. In exchange, appellants agreed to abandon the 275 and 608 applications and further agreed not to "file any additional patent application directed to the particular 'subject matter disclosed' (as that phrase is construed in U.S. patent law) in the '275 Application or the '608 Application . . . ." Finally, the agreement provided that, in the event of a breach, "Choate, Inc. shall be obligated to refund to Blephex, LLC" the $162,000 payment. Based on the settlement agreement, the trial court

2

dismissed the lawsuit with prejudice, retaining jurisdiction to enforce the terms of the agreement and release.

Appellees subsequently moved to enforce the settlement agreement and release, alleging that Choate had breached the settlement by filing a new patent application: patent application number 15/845,742 ("742 application"). The 742 application was entitled "Adapter Kit for a Battery Powered Rotary Tool, a Rotary Tool, and a Rotary Swab." The background of the application stated that "[s]mall handheld battery powered rotary tools are used . . . by . . . ophthalmologists." The summary of the application referred to an "adapter kit" with a "rotary foam swab tip adapted to connect to a rotary collet connected to the electric motor upward shaft." Two "claims" in the description section of the application sought to protect "[a]n adapter kit for a battery powered ophthalmic rotary tool for treating an eyelid, the rotary tool having a tubular housing containing a motor and a battery" that operates to "remove debris from an eyelid . . . ." Although the application originally claimed three inventions— an adapter kit, a rotary foam swab, and a battery powered rotary tool— Choate later elected to proceed only with the adapter kit. The 742 application led to the issuance of patent number 10,404,203 ("203 patent").

Appellees argued that the 275 and 608 applications and the 742 application involved the same subject matter—mechanical devices with swabs for removing debris from a person's eye—and therefore Choate's filing of the 742 application was a breach of the settlement agreement. Appellants responded that the claims of the 742 application were directed to an adapter kit, which was not even mentioned in the 275 and 608 applications.

During an evidentiary hearing, Rynerson testified that the BlephEx and Choate's competitor product, the AB Max, function the same way. They both spin a sponge along the lid margin to debride the biofilm. Rynerson further testified that they "do the same thing" and are "marketed to do the same thing." In a marketing video that was published to the court, Choate referred to the AB Max as a second-generation device that does a better job than the first-generation device, the BlephEx.

Choate testified that the 742 application was for an adapter for the Algerbrush, an already existing third-party product. Choate explained that his product pulses, whereas the BlephEx turns only in forward and reverse. Additionally, the design for the adapter replaced the AA battery.

The trial court found that "the 742 and the eventual 203 patent, did

3

breach paragraph four because the subject matter disclosed as far as the Court is concerned, is sufficiently tied to the specific subject matter disclosed, and the 275 and 608 applications." Based upon the testimony, video, case law, and other materials, the trial court concluded that "a fair reading of the breach section" is that "the nexus has been met between the 742 application and the resulting 203 patent to the subject matter disclosed within the 275 and the 608 applications and resulting patents, so as to breach the paragraph at issue."

The trial court entered a written final judgment ordering that appellees recover from appellants, jointly and severally, $162,000 plus prejudgment interest for a total of $172,113.92. Appellants appealed.

## 1. Was There a Breach of the Settlement Agreement?

Although many of the facts of this case involve the original patents filed by appellees and later by appellants, at its core this case revolves around the interpretation of the settlement agreement. We review and interpret a contract under the de novo standard of review. *Klinow v. Island Court at Boca W. Prop. Owners' Ass'n,* 64 So. 3d 177, 180 (Fla. 4th DCA 2011). Factual determinations must be supported by competent substantial evidence. *Id.*

We review settlement agreements "in accordance with principles of contract law." *Per Jonas Ingvar Gustafsson v. Aid Auto Brokers, Inc.*, 212 So. 3d 405, 408 (Fla. 4th DCA 2017). Of course, "[w]hen interpreting a contract, a court should give effect to the plain and ordinary meaning of its terms." *Id.* (citation omitted). Finally, and equally obvious, "[c]ourts may not rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *Id.* (citation omitted).

In this case, the dispute centers on the language of the settlement agreement and specifically the language regarding potential breaches, which states as follows:

> 4. <u>Breach</u>. In the event any of the Choate Parties, or any related entity or any entity that the Choate Parties own an interest in, fails to expressly abandon the '275 Application or the '608 Application pursuant to paragraph 5 or if the Choate Parties, or any related entity or any entity that the Choate Parties own an interest in, *should file any additional patent application directed to the particular "subject matter disclosed" (as that phrase is construed in U.S. patent law) in the '275*

4

*Application or the '608 Application* then, in addition to any other remedies available at law or in equity, if not cured within 30 days of receiving notice of breach, Blephex, LLC's payment obligations shall immediately cease and Choate, Inc. shall be obligated to refund to Blephex, LLC any and all payments made under the Settlement Agreement, as amended.

(emphasis added).

Appellants argue that the patent claim in the 742 application, which is only the adapter kit, does not overlap with the subject matter of the 275 and 608 applications, which involve the mechanical device that removes debris from the eye. Appellees, on the other hand, state that although the patents may be different, the settlement agreement involves more than just protection for the patent itself, but rather the whole subject matter disclosed.

The subject matter disclosed differs from the actual patent claim. The subject matter disclosed refers to that which is described in a patent or patent application's specifications. *See Catch Curve, Inc. v. Venali, Inc.*, 363 Fed. Appx. 19, 22 (Fed. Cir. 2010). The subject matter is determined "upon the whole face of the specification and the accompanying drawings." *Bates v. Coe*, 98 U.S. 31, 38-39 (1878). The specification includes the "[b]ackground of the invention," a "[d]etailed description of the invention," and a "[b]rief description of the several views of the drawing." 37 C.F.R. § 1.77; *see also* MPEP § 608.01 (setting forth the requirements of the specification per the Manual of Patent Examining Procedure). "The specification must include a written description of the invention or discovery and of the manner and process of making and using the same, and is required to be in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which the invention or discovery appertains . . . to make and use the same." 37 C.F.R. § 1.71(a).

A patent claim, in contrast, defines the invention that is sought to be protected. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014); *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996); *see also Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 607 (1950) (defining the parameters of a claim by noting that when determining if "an accused device or composition infringes a valid patent, resort must be had in the first instance to the words of the claim. If accused matter falls clearly within the claim, infringement is made out and that is the end of it.") (Jackson, J., majority opinion). Thus, the subject matter disclosed in a patent application is broader than the claim. *ArcelorMittal France v. AK Steel Corp.*, 700 F. 3d 1314, 1321 (Fed. Cir. 2012).

We find that when the breach provision of the settlement agreement refers to "any additional patent application directed to the particular 'subject matter disclosed,'" that provision covered all that would be encompassed within the "subject matter disclosed." In other words, the breach provision would cover all that is described in the application or contained within the "whole face of the specification and the accompanying drawings." *Bates*, 98 U.S. at 38-39. This particular language would have a broader scope to cover not only the claim but also everything described in the application and specifications.

This broad language of "subject matter disclosed" differs from "claim," which describes only that which is protected by the patent. Appellants argue that the filing of a patent for the adapter did not breach the settlement agreement since the adapter, which attaches to the medical device, is clearly different than the medical device for treating an ocular disorder. However, we are guided by the language of the settlement agreement. The settlement agreement states that appellants would breach if they "file any additional patent application directed to the particular 'subject matter disclosed.'" Thus, we would look at the entire patent application which includes all the background for the medical device that the adapter would be used with. Clearly, by looking at the entire application, and all that is understood to be part of the "subject matter disclosed," there is a significant overlap with that which was part of the initial patent application for appellees' medical device.

If appellants wanted the ability to file a separate patent for the adapter, realizing that the entire application and background would be part of the patent application for the adapter, then the settlement agreement should have had language that would not have prohibited the "subject matter disclosed" as part of the breach language. The settlement agreement should have limited its reach to appellees' prior "claim" and not included appellees' "subject matter disclosed."

### 2. Which Party Pays for the Breach?

The trial court entered a judgment for $162,000 plus prejudgment interest against all appellants even though the settlement agreement expressly limited liability to Choate, Inc. Paragraph 4 of the settlement agreement states that if any of the appellants breach the agreement, "Choate, Inc. shall be obligated to refund to BlephEx, LLC" the $162,000 payment made under this settlement agreement. This agreement made no mention of the other appellants, like Choate individually or Myco Industries, being liable for the return of the $162,000.

6

Appellees rely on language in the settlement agreement that the return of the $162,000 is "in addition to any other remedies available at law or in equity." This language appears to allow appellees other remedies at law or in equity for the breach of the settlement agreement, in addition to the return of the $162,000. It does not mean that we can rewrite the settlement agreement to include Choate individually and Myco Industries.

In *Dinuro Investments, LLC v. Camacho*, 141 So. 3d 731, 742 (Fla. 3d DCA 2014), the court found that the language in the settlement agreement allowing the pursuit of "any other remedies available at law or equity" simply meant that a party "may pursue additional remedies consistent with Florida statutory and common law." We reject reading the settlement agreement to include Choate individually and Myco Industries because if we were to read those parties into the breach language, we would be rendering the actual language of the settlement limiting liability to Choate, Inc., into mere surplusage. *Fla. Inv. Grp. 100, LLC v. Lafont*, 271 So. 3d 1, 5 (Fla. 4th DCA 2019) ("[N]o word or part of an agreement is to be treated as a redundancy or surplusage if any meaning, reasonable and consistent with other parts, can be given to it . . . .") (citation omitted).

The record is devoid of any allegations or evidence why Choate individually or Myco Industries should be liable. There is no evidence of alter ego or piercing the corporate veil. Even though Choate as an individual and Myco Industries were also parties to the settlement agreement, and appellees alleged after the evidentiary hearing that Choate, Inc., was dissolved, none of that allows the trial court to change the settlement agreement negotiated among themselves.

Appellees claim that it would not be "just and fair" and that it would be "inequitable" to hold only Choate, Inc., liable for return of the funds. Nevertheless, if appellees wanted Choate as an individual and Myco Industries to be liable with Choate, Inc., they should have negotiated that to be included in the final settlement agreement. Like we stated previously in Section 1 of this opinion, when interpreting a contract, we "should give effect to the plain and ordinary meaning of its terms" and "[c]ourts may not rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *Per Jonas Ingvar Gustafsson*, 212 So. 3d at 408 (citation omitted).

In conclusion, we find that the trial court correctly determined that appellants breached the plain language of the settlement agreement and therefore are liable for the return of the $162,000 plus interest to appellees. Thus, we affirm the finding of breach of the settlement

agreement.  We also find that the trial court erred by adding parties to those who would be liable for the return of the monies where, according to the plain language of the settlement agreement, only Choate, Inc., was liable for any breach of the settlement agreement.  Accordingly, we reverse and remand for the trial court to vacate that portion of the judgment holding Choate individually and Myco Industries liable.

*Affirmed in part, reversed in part, and remanded with instructions.*

WARNER and KLINGENSMITH, JJ., concur.

*          *          *

***Not final until disposition of timely filed motion for rehearing.***